IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
:
JOE BURGOS VEGA          :        3:03 CV 2248 (PCD)
:
:
V.                                :
:
THERESA LANTZ, ET AL.     :        DATE: AUGUST 31, 2007
:
---------------------------------------------------------X

RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Joe Burgos Vega commenced this civil rights action under 42 U.S.C. § 1983, pro se,[1] on December 24, 2003, which Complaint (Dkt. #1) was superseded by an Amended Complaint, filed on February 28, 2006, in which plaintiff alleges violations of his Fifth, Eighth and Fourteenth Amendment rights, and seeks a declaratory judgment and injunctive relief regarding his level 3 classification sex offense risk score assigned to him after he was found guilty of two counts of first degree assault under CONN. GEN. STAT. § 53a-59, and one count of second degree kidnapping under CONN. GEN. STAT. § 53a-94. (Dkt. #42).[2] Plaintiff challenges the assignment of this classification on grounds that he "has never been convicted of a sexual offense." (Id. ¶ 27). Defendants filed their Answer and affirmative defenses sixteen days later. (Dkt. #43). This case, as a prisoner matter, was referred to this Magistrate Judge on January 20, 2005.

On September 18, 2006, plaintiff filed, pro se, the pending Motion for Preliminary

---

[1] On January 8, 2007, counsel appeared for plaintiff. (Dkts. ##56-57).

[2] Plaintiff was found not guilty of first degree sexual assault under CONN. GEN. STAT. § 53a-70.

Injunction. (Dkt. #48).[3] On January 3, 2007, defendants filed their brief in opposition. (Dkt. #55; see Dkts. ##53-54).[4] Fifteen days later, plaintiff filed his reply brief (Dkt. #58), to which defendants filed a surreply brief on January 29, 2007. (Dkt. #64).[5] Two days later, on February 1, 2007, plaintiff filed his Motion for Leave to File a Memorandum in Response to Defendants' Surreply. (Dkt. #65).[6]

For the reasons stated below, plaintiff's Motion for Preliminary Injunction (Dkt. #48) is denied.

## I. FACTUAL BACKGROUND

Plaintiff is serving a sixty year sentence for assault and kidnapping; plaintiff was found not guilty of sexual assault. (Dkt. #64, attachment, State of Conn. v. Vega, CR 9611500, 2005 Conn. Super. LEXIS 3086, at *1 (Conn. Super. Ct. Oct. 26, 2005)). The

---

[3]See note 1 supra.

[4]The following exhibits are attached: copies of sixty-four pages, including all incident reports issued by the Connecticut Department of Corrections ["DOC"], dated and relating to September 11, 2006 (Exh. A); plaintiff's admission to and transfer history within the DOC (Exh. B); affidavit of Frederick Levesque, Director of Classification and Population Management, sworn to December 29, 2006 ["Levesque Aff't"](Exh. C); the admission to and transfer history within the DOC for Inmate Necaise (Exh. D); copy of plaintiff's Charges/Dispositions Report from the State of Connecticut OBTS (Exh. E); and copy of plaintiff's Certificate of Authenticity of protected health information and corresponding medical documents relating to the September 11th incident (Exh. F).

[5]The following exhibits are attached: copy of State of Conn. v. Vega, CR 9611500, 2005 Conn. Super. LEXIS 3086 (Conn. Super. Ct. Oct. 26, 2005); copy of Amended Petition for Writ of Habeas Corpus, Ricketts v. Warden, State Prison, filed in the Superior Court, Judicial District of Tolland at Rockville, October 13, 2005 and copy of transcript of proceedings held on November 17, 2006 before Superior Court Judge Stanley Fuger; and copies of case law. This brief was filed again on April 27, 2007, this time with an affidavit of defense counsel attached. (Dkt. #76).

As plaintiff observes in his Motion for Leave to Respond to Defendants' Reply, defendants did not seek leave of the Court to file their surreply brief. Plaintiff's Motion (Dkt. #65) is granted.

[6]Attached is plaintiff's Memorandum in Response to Defendants' Surreply (Exh. A) and a copy of case law (Exh. B).

On August 27, 2007, plaintiff filed his Motion for Summary Judgment (Dkts. ##86-90); defendants have requested additional time to file their dispositive motion. (Dkt. #85).

2

Connecticut Department of Corrections ["DOC"] classified plaintiff as a sex offender with a S-3 sex offense treatment needs ["SOTN"] score; in this underlying action, plaintiff challenges this classification because he was convicted only of assault and kidnapping. (Dkt. #58, at 2). According to defendants, they have not "label[ed] or characterize[d] plaintiff as a 'sex offender' in any way [of which] other inmates would be aware." (Dkt. #55, at 3).

## II. DISCUSSION

A party may prevail on a motion for a preliminary injunction when the party demonstrates (1) irreparable harm absent injunctive relief, and (2) either (a) a likelihood of success on the merits, or (b) "that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005)(citations & internal quotations omitted). "Such relief, however, is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. (citations & internal quotations omitted). Moreover, "when the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)(internal quotations & citations omitted). When a party seeks a "mandatory injunction" that will "alter, rather than maintain, the status quo . . . by commanding some positive act," the moving party must demonstrate a clear or substantial likelihood of success.[7] Nicholson v. Scoppetta, 344 F.3d 154, 165 (2d Cir.

---

[7] The relief that plaintiff seeks in this case is "single cell status." (Dkt. #48, at 1). Accordingly, plaintiff is requesting a mandatory injunction as prisoners are not typically housed in a single cell. (Dkt. #55, at 8; see Levesque Aff't ¶ 25).

3

2003)(citation & internal quotation omitted). The district court retains "wide discretion in determining whether to grant a preliminary injunction." Moore, 409 F.3d at 511 (citations omitted).

According to defendants, plaintiff cannot show any ongoing irreparable harm, nor can he establish a substantial likelihood of success on the merits of his claim as there is no liberty interest in an inmate's classification status. (Dkt. #55, at 8-12; see Dkts. ##64 & 76, at 2-5). Conversely, plaintiff contends that there exists a due process liberty interest in his classification as such classification creates an atypical and significant hardship and stigmatizes him as a sex offender; plaintiff has and will continue to suffer irreparable harm due to his classification since he lives under a "constant and imminent threat of violence due to his classification"; and plaintiff has been the subject of rumors, harassment, and fights. (Dkt. #58, at 8-9; see also Dkt. #55, Exh. A).

A. S-3 CLASSIFICATION - SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

While "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995)(citations, internal quotations & alterations omitted). Accordingly, it is well-settled that not every state action that results in adverse consequences for prison inmates implicates a due process right. See id. at 483-84 (discretionary placement in segregated confinement does not impose atypical and significant hardship on inmate and thus does not give rise to due process protections); Moody v. Daggett, 429 U.S. 78 (1978)(prison classification and eligibility for rehabilitation programs, which are within prison officials' full discretion to control, do not create a statutory or constitutional entitlement

sufficient to invoke due process ); Meachum v. Fano, 427 U.S. 215 (1976)(due process rights not implicated when discretionary transfer of state prisoners to less agreeable prison, even when the transfer resulted in a "grievous loss" upon the inmate).

In Sandin, the U.S. Supreme Court identified the two situations in which a prisoner can be further deprived of "life, liberty or property," such that due process is required. 515 U.S. at 484. The first occurs when there is a severe change to conditions of confinement in such an unexpected manner so as to essentially exceed the sentence as set by the court; the second occurs when the state deprives an inmate of a benefit and that deprivation "imposes atypical and significant hardship in relation to the ordinary incidents of prison life." Id. As the Second Circuit has reasoned, "[a]fter Sandin, a prisoner who experiences a deprivation arising under mandatory rules has no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison with sufficient regularity that such deprivation is typical." Welch v. Bartlett, 196 F.3d 389, 392 (2d Cir. 1999)(citation omitted).

This district and our state courts have held repeatedly that the classification of inmates by the Connecticut DOC does not give rise to a due process right of action. See Green v. Armstrong, No. 3:96 CV 1127 (AVC)(TPS), slip. op. at 10 (D. Conn. Feb. 25, 1998), aff'd mem., 189 F.3d 460 (2d Cir. 1999); Harris v. Meulemans, 389 F. Supp. 2d 438, 441-43 (D. Conn. 2005); Taylor v. Levesque, No. 3:03 CV 1347(HBF), 2005 WL 3050973, at *2-4 (D. Conn. Nov. 10, 2005); Wheway v. Warden, 215 Conn. 418, 430-32 (1990)(prisoner classification remains at the discretion of the Commissioner of Correction and does not create any liberty interest or constitutional entitlement to due process); Santiago v. Comm., 39 Conn. App. 674, 680-81 (App. Ct. 1995)(improper classification does not deprive inmates of any legally recognized liberty interest). Thus, in order for plaintiff to prevail on his claim that

he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law, plaintiff must demonstrate "both that, as a result of the classification, he suffered an atypical and significant hardship in relation to the ordinary incidents of prison life and that the state has created a protected liberty interest in inmate classification." Taylor, 2005 WL 3050973, at *2.

Plaintiff contends that the stigma of being classified as an S-3 sex offender has deprived him of a liberty interest, and this stigmatizing effect gives rise to a due process claim. (Dkt. #58, at 5). In Paul v. Davis, 424 U.S. 693 (1976), the U.S. Supreme Court articulated that damage to an individual's reputation can constitute a due process claim if a plaintiff can show: (1) the utterance of a statement that is sufficiently derogatory to injure the individual's reputation, that is capable of being proved false, and that the individual claims is false, and there is (2) some tangible and material state-imposed burden or alteration of the individual's status or of a right in addition to the stigmatizing statement. Id. at 701-02, 710-11. "This requirement is known in this Circuit and elsewhere as the 'stigma plus' test." Doe v. Dep't of Public Safety, 271 F.3d 38, 47 (2d Cir. 2001)(multiple citations omitted), rev'd on other grounds, 123 S. Ct. 1160 (2003)(citations omitted).

While the Second Circuit has recognized the stigma associated with the assignment of sex offender status, this Circuit, unlike others, has not yet addressed whether such a classification implicates a protected liberty interest. See id. at 47-60 (challenging Connecticut sex offender registry). Two years after Sandin, the Ninth Circuit held that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997). According to

the Ninth Circuit, the "classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship' on the inmate in relation to the ordinary incidents of prison life'" that the Supreme Court addressed in Sandin. Id. at 829 ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender.")(footnote omitted). Similarly, the Tenth and Eleventh Circuits agree that "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." Kirby v. Siegelman, 195 F.3d 1285, 1291-92 (11th Cir. 1999); see Gwinn v. Awmiller, 354 F.3d 1211, 1217-19 (10th Cir.), cert. denied, 534 U.S. 860 (2004); Chambers v. Colo. Dep't of Corr., 205 F.3d 1237, 1240-44 (10th Cir.), cert. denied, 531 U.S. 962, 531 U.S. 974 (2000).

Plaintiff contends that the well-established case law in this state and district that makes clear that classifications do not deprive inmates of any legally recognized liberty interest is not applicable to this case as those cases, while addressing inmate classification, do not address due process claims arising out of the more specific and stigmatizing sex offender classification scheme. (See Dkt. #58, at 2). Instead, plaintiff relies on the August 30, 2005 decision of Superior Court Judge Trial Referee Rittenband in Thomas v. Warden, 49 Conn. Supp. 416, 440-41 (Conn. Super. Ct. 2005), in which Judge Rittenband concluded that a Connecticut state inmate "does have a liberty interest in not being labeled as a sex offender" and that "by so labeling him, the [Commissioner] has burdened [the inmate] with an atypical and significant hardship . . . ."

In Thomas, the petitioner was charged with the crimes of burglary in the first degree, assault in the third degree and sexual assault in the first degree, and like the plaintiff in this case, the petitioner was acquitted of the sexual assault charge. 49 Conn. Supp. at 420-21. In that case, defendant advanced the same arguments made here, namely that the

7

department relied on the Connecticut Department of Correction Objective Classification Manual in making its determination of petitioner's S-3 score, and that the department has not labeled the petitioner as a sex offender. Id. at 422-26. Judge Rittenband dismissed the department's arguments on grounds that the department's "rigid insistence" on what he labeled the department's "wrongful policy . . . seriously undermines the credibility of the [DOC]," and "[c]ommon sense indicates that one is not labeled as having a need for sex offender treatment if one does not have a history of sexual offenses, no matter how wrong that is in the present case. . . . 'When it walks like a duck, acts like a duck and quacks like a duck, it is a duck!?'" Id. at 423-25 (emphasis in original). Further, in assessing whether the petitioner satisfied the "stigma plus" test set forth in Paul, 424 U.S. at 701-10, Judge Rittenband, relying on, inter alia, Neal, 131 F.3d at 829, and Kirby, 195 F.3d at 1292, concluded that a classification as a sex offender imposes a stigmatizing label that seriously damages and tarnishes a reputation, which is a tangible and material burden on the petitioner. Id. at 425-31. Judge Rittenband also held that the wrongful labeling of an inmate as a sex offender with an S-3 overall risk score implicates the liberty interest articulated in Sandin as it results in the inmate "being burdened by an atypical and significant hardship in that it is substantially more grave than hardships the inmate would be likely to endure simply as a consequence of the ordinary administration of the prison." Id. at 433-35.[8]

While Thomas is supportive of plaintiff's position and draws distinct similarities to plaintiff's situation, the decision, to date, is an anomaly in the state and is not controlling in

---

[8]While petitioner's amended petition alleged deprivation of petitioner's liberty interest under the Fourteenth Amendment of the U.S. Constitution and under Article First, §§ 8 & 10 of the Connecticut Constitution and in violation of Article First, § 9 of the Connecticut Constitution, 49 Conn. Supp. at 418, and while Judge Rittenband addressed in considerable detail petitioner's liberty interests under applicable Fourteenth Amendment case law, id. at 424-35, the ruling held that respondent had violated petitioner's rights under Article First, § 9, of the Connecticut Constitution. Id. at 435-42.

this district.[9]  As discussed briefly above, and further elaborated upon below, state and federal courts in Connecticut, notwithstanding Thomas, recognize the United States Supreme Court's acknowledgment that because Congress has given federal prison officials full discretion to control the conditions of confinement through mandatory statutory and regulatory schemes, federal prisoners do not have a legitimate or constitutional entitlement to prisoner classification sufficient to invoke due process.  Moody, 429 U.S. at 88.  "Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification."  Taylor, 2005 WL 3050973, at *3 (citation omitted).  In Connecticut, the Commissioner of Correction exercises that discretion by requiring that every inmate committed to her custody undergo a standardized classification process that takes into account "risks" and "needs," which are assigned numerical scores from 1 through 5, to

---

[9]The specific sex offender classification issue has not been addressed often in this state and has not been addressed in this district. However, it is well-settled in this Circuit and State that an inmate's classification does not give rise to a due process right. (See Section I.A. supra & infra).

Moreover, while in Doe, 271 F.3d at 47-48, the Second Circuit held that there exists a stigma in being labeled as a sex offender, that case, unlike the case at bar, involved a due process challenge to the public notification provisions of Connecticut's sex offender registration law, in that the registry did not differentiate between dangerous and non-dangerous offenders.  In this case, the assignment of such a classification is not used as a label but, as defendant claims, is a confidential assessment, accessible to correctional staff, the inmate, the Board of Parole, and possibly other law enforcement personnel, so that the only way that another inmate could gain access to plaintiff's sex offense treatment needs score is if plaintiff revealed it to the other inmate in some fashion.  (Levesque Aff't ¶¶ 21-23).  Plaintiff's allegations in this case confirm this policy as plaintiff claims that he was attacked by his cell mate after his cell mate learned of plaintiff's "'sexual offense risk score 3' [from reviewing plaintiff's] legal documents" relating to this case. (Dkt. #48, ¶ 7).  Accordingly, unlike the circumstances at issue in Doe, plaintiff's classification would not arise to a "stigma" since he was not "labeled" a sex offender and the classification was not made public by the DOC, but rather, it was in plaintiff's own legal documents that this information was disclosed.  Further, as stated infra, all inmates committed to the custody of the Commissioner are assigned a numerical designation of 1 through 5 for each of the stated categories, so that all inmates receive a sex offender treatment needs score during the classification process. (Levesque Aff't ¶ 9).  The internal assignment of this non-public classification is not the "atypical and significant hardship" contemplated in Sandin, 515 U.S. at 484.

9

reach an "Overall Risk Score." (Levesque Aff't ¶¶ 4-5).[10]  In the DOC Objective Classification Manual, inmates with an assessment of S-3 "have a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim. . . ." CONNECTICUT DEPARTMENT OF CORRECTION OBJECTIVE CLASSIFICATION MANUAL REV. 7/05, at 36 (2005), http://www.ct.gov/doc/cwp/view.asp?a=1492&q=270052.  According to Frederick Levesque, DOC's Director of Classification and Population Manager, "[b]eing convicted of a criminal offense beyond a reasonable doubt is not the only manner in which an inmate might receive a sex offense treatment needs score of 3 or higher." (Levesque Aff't ¶ 12).  The DOC may base the needs score upon the description of the crime from police reports, PSI's, or other reliable investigative reports.  CONNECTICUT DEPARTMENT OF CORRECTION OBJECTIVE CLASSIFICATION MANUAL REV. 7/05, at 5.  However, the Classification Manual also provides: "No stand-alone charge for which the offender has been found not guilty or the charged nolled, or dismissed, may be used to determine any risk score." Id.[11]

The Commissioner of Correction is required, by statute, to establish the classification programs throughout the DOC, see CONN. GEN. STAT. § 18-81, and the sex offender classification scheme at issue in this case, as in Thomas, applies to all inmates committed to

---

[10]The seven categories assigned a "risk score" are the inmate's escape profile, the severity or violence of his current offense, whether there is a history of violence, the length of the inmate's sentence, the presence of any pending charges and/or detainers, and whether or not the inmate has been found to have a membership in a "Security Risk Group" or gang; the seven "needs scores" are medical needs, mental health needs, education needs, substance abuse treatment needs, vocational/work skill needs, sex offense treatment needs, and family/residence/community resource needs. (Levesque Aff't ¶¶ 7-8).  Inmates are assigned a numerical designation of 1 through 5 for each of these categories, so that all inmates receive a sex offender treatment needs score during the classification process. (Id. ¶ 9).

[11]The Court notes that it is problematic that the Classification Manual is internally inconsistent as it states that plaintiff's classification score may not be based on a charge of which he was found not guilty, but then also provides that the score may be reached based upon a description of the crime from police reports, PSI's, or other reliable investigative reports, an anomaly that clearly offended Judge Rittenband. Thomas, 49 Conn. Supp. at 418-20, 422-23.

the custody of the Commissioner. (Levesque Aff't ¶ 4); see also Smith v. Rowland, No. 3:04 CV 814 (RNC), 2007 WL 987481, at *3 (D. Conn. Mar. 31, 2007). The assignment of the SOTN classification remains within the full discretion of the Commissioner in execution of her duty to control the conditions of confinement, Wheway, 215 Conn. at 431, and the DOC, consistent with the authority accorded by CONN. GEN. STAT. § 18-81, has made the decision that for security purposes, persons who have a questionable history of problem sexual behavior should not be housed in lower than a level 3 facility at which sex offender treatment programming is available. (Levesque Aff't ¶ 11; see also id. ¶¶ 16, 20). As the U.S. Supreme Court and Second Circuit have recognized, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible [to] easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Pugliese v. Nelson, 617 F.2d 916, 925 (2d Cir. 1980)(citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 128 (1977))(additional citations omitted). Accordingly, "judicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system," which as the Second Circuit has cautioned, is "better left to the expertise of prison administration authorities." Id. at 925.

Accordingly, as previously found in this district, the improper classification of inmates in DOC's custody does not give rise to a civil rights action, as inmates have no state or federally created liberty interest in their classification. See Pugliese, 617 F.2d at 923-24 & nn. 5, 6 (there is no due process liberty interest in avoiding prisoner classification that delayed or precluded participation in institutional programs); Vega v. Lantz, No. 3:04 CV 1215(DFM), 2006 WL 2788374, at *5-6 (D. Conn. Sept. 26, 2006)(challenge to this plaintiff's

high security classification is not a cognizable claim as inmates have no protected liberty interest in their classification); Torres v. Howell, No. 3:03 CV 2227 (MRK)(WIG), 2006 WL 1525942, at *16 (D. Conn. May 30, 2006)(inmate cannot maintain § 1983 claims based on allegedly improper classification as inmates have no protected right to particular classification), Harris, 389 F. Supp. 2d at 441-43 (inmate does not have a right to a particular classification in that the Commissioner of Correction retains discretionary authority to classify prisoners at any security level); Taylor, 2005 WL 3050973, at *2-4; Griffin v. Cleaver, No. 3:03 CV 1029(DJS)(TPS), 2004 WL 1875029, at *3-4 (D. Conn. Aug. 17, 2004) (plaintiff's classification as a Security Risk Group Safety Threat Member does not give rise to a civil rights action); Torres v. Stewart, 263 F. Supp. 2d 463, 469-71 (D. Conn. 2003)(pretrial detainees do not have a constitutionally protected right to a particular prisoner classification); Allen v. Armstrong, No. 3:98 CV 668 (PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000)(due process clause affords prisoners no protection from erroneous classifications); Green, No. 3:96 CV 1127 (AVC)(TPS), slip. op. at 10 (there is no state-created liberty interest in proper classification of inmates); Wheway, 215 Conn. at 430-32 (prisoner classification remains at the discretion of the Commissioner of Correction and does not create any liberty interest or constitutional entitlement to due process); Santiago, 39 Conn. App. at 680 (improper classification does not deprive inmates of any legally recognized liberty interest); Weinberg v. Radgowski, No. 563929, 2003 WL 1787944, at *1 (Conn. Super. Ct. Mar. 18, 2003)(inmate with a level S-2 risk score does not have constitutionally protected right to a particular classification), Carpenter v. Warden-Cheshire, No. CV 980418564S, 2000 WL 1912697, at *4 (Conn. Super. Ct. Dec. 14, 2000)("Since the prison authorities have full discretion to control prison classifications, such as an inmate's sex need score, the petitioner does not have a legitimate statutory or constitutional entitlement sufficient to invoke due process

considerations.").

At this stage in plaintiff's case, in light of the wealth of controlling case law on the issue of inmate classifications, albeit not on the specific issue of sex offender classification of state inmates, plaintiff's claims cannot satisfy the "more rigorous" likelihood of success standard set forth in Beal, 184 F.3d at 122. Plaintiff can neither show that as a result of the classification, he suffered an "atypical and significant hardship" in relation to the ordinary incidents of prison life,[12] or that the state has created a protected liberty interest in inmate classification. See Sandin, 515 U.S. at 484. Additionally, because preliminary injunctive relief is an "extraordinary and drastic remedy," this Court takes seriously its obligation to exercise its discretion only when the "movant, by a clear showing, carries the burden of persuasion." Moore, 409 F.3d at 510 (citations & internal quotations omitted). In this case, plaintiff seeks a "mandatory injunction" such that plaintiff seeks to receive single cell status; for the reasons stated above, plaintiff has not carried his "more stringent" burden to make a "clear" or "substantial" showing of a likelihood of success on the merits. See Jolly v. Coughlin, 76 F.3d 468, 473-74 (2d Cir. 1996)(citations & internal quotations omitted).

### B. IRREPARABLE HARM

Plaintiff claims that on September 11, 2006, he was attacked by his cell mate after his cell mate learned of plaintiff's SOTN S-3 score from reviewing plaintiff's legal documents, (Dkt. #48, at 3), and due to the sexual offender stigma created by the defendants, "[p]laintiff has had numerous unreported fights with other inmates," has been subjected to unfair treatment and the subject of rumors and harassment, and has even "questioned his wanting to live." (Dkt. #58, at 9-10; see also Dkt. #42, ¶¶ 21, 45, 47-49). Plaintiff also

---

[12]See Section II.B. infra.

claims that he "lives under a constant and imminent threat of violence" due to his classification, and as a result of the September 11th altercation, plaintiff was arrested and is facing criminal charges which constitute an ongoing and irreparable harm directly resulting from plaintiff's classification. (Dkt. #58, at 9).

Both parties acknowledge that being convicted and imprisoned for his criminal conduct exceeds the harm to plaintiff's reputation that plaintiff's S-3 classification may impose. (See Dkts. ##64 & 76, at 1-2; Dkt. #65, Exh. A, at 3). Although plaintiff claims that his classification has caused "<u>further</u> – and perhaps greater – harm to his reputation in light of the manner in which inmates classified as sex offenders are treated in prison," plaintiff cannot show any ongoing irreparable harm. (See Dkt. #65, Exh. A, at 3-4)(emphasis in original). While plaintiff's arrest and subsequent criminal charges arose out of the September 11th altercation with his cell mate (which resulted in "multip[le] abrasions to [his] face and neck" and bites to his chest and ring finger)(Dkt. #55, Exh. A, at 18, 59, 61), the contemporaneous reports relating to this incident do not reveal that the incident arose as a result of plaintiff's classification, but rather that plaintiff was first attacked by his cell mate two days earlier because of noise made in the cell; plaintiff did not report that incident for fear of being labeled as a "snitch"; the September 11th altercation was the result of plaintiff wanting to leave the cell to shower and his cell mate preventing him because he did not want plaintiff to inform someone of the September 9th incident. (Dkt. #55, Exh. A, at 47-48). Additionally, although this altercation took place more than eleven months ago, plaintiff has not made any further allegations of incidents with other cell mates. In order for plaintiff's claims regarding his ill treatment and constant and imminent threat of violence to establish irreparable harm (<u>see</u> Dkt. #58, at 9-10; <u>see also</u> Dkt. #42, ¶¶ 21, 45, 47-49), plaintiff must show that this harm is <u>actual</u> and imminent, not that it is threatened and speculative. See

Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002)(citations omitted). Further, unlike the circumstances in this case, the "continuing harm . . . cannot be adequately redressed by final relief on the merits and . . .money damages cannot provide adequate compensation." Id. (citations & internal quotations omitted).

### III. CONCLUSION

For the reasons stated above, plaintiff's Motion for Preliminary Injunction (Dkt. #48) is denied.[13]

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 31st day of August, 2007.

_/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[13] For reasons that are unclear to the Court, there has been unnecessary bickering between counsel in these filings. See, e.g., Dkt. #58, at 2, 5-8; Dkt. #65, at 1-2; Dkt. #76, Affidavit. The attorneys involved in this matter are too talented to resort to this kind of behavior, and should refrain from such activities in the future.